**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**LADISH MALTING CO., Defendant–
Appellant.**

No. 97–2417.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1997.

Decided Jan. 30, 1998.

Rehearing Denied March 11, 1998.

Peggy A. Lautenschlager, David E. Jones (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

James M. Shellow (argued), Shellow, Shellow & Glynn, Milwaukee, WI, for Defendant–Appellant.

Before CUDAHY, EASTERBROOK, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

After one of its workers fell to his death when a rickety fire escape platform collapsed, Ladish Malting Company was charged with a criminal violation of the Occupational Safety and Health Act. The statute reads: "Any employer who willfully violates any standard, rule, or order promulgated pursuant to [29 U.S.C. § 655], or of [sic] any regulations prescribed pursuant to this chapter, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both". 29 U.S.C. § 666(e). According to the indictment, Ladish violated 29 C.F.R. § 1910.36(b), which requires employers to maintain safe fire exits. See also 29 C.F.R. § 1910.37(d)(1). Because Ladish is a corporation, 18 U.S.C. § 3571(c)(4) increases the maximum fine to $500,000, though the offense remains a misdemeanor, and therefore eligible for trial before a magistrate judge. 18 U.S.C. § 3401; Fed.R.Crim. P. 58. Magistrate Judge Crocker told the jury that:

A violation of an OSHA regulation, either by act or omission, is "willful" if it is done knowingly and voluntarily, either in reckless disobedience of the regulation or in reckless disregard of the requirements of the regulation.

"Reckless disregard" of a regulation means that the company, having knowledge of the hazardous condition, made no reasonable effort to determine whether its conduct would constitute a violation of the regulation, but acted with deliberate indifference toward the requirements of that regulation, about which the company actually

knew or about which the company reasonably should have known.

In this context, "having knowledge of the hazardous condition" means that the company knew or should have known of the hazardous condition.

This instruction permitted the jury to conclude that Ladish "willfully" violated the rules if it "should have known" of the fire escape's dilapidated condition and "reasonably should have known" that such hazards violate federal regulations. The jury returned a verdict of guilty, the magistrate judge fined Ladish $450,000, and the district judge affirmed, rejecting Ladish's protest about the jury instructions.

"Willfully" is a notoriously slippery term, see *Ratzlaf v. United States*, 510 U.S. 135, 141, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994), which requires translation for placement among a more precise hierarchy of mental states such as the one devised by the Model Penal Code: purposely, knowingly, recklessly, and negligently. American Law Institute, *Model Penal Code* § 2.02(2) (1962). The Supreme Court found the Model Penal Code's classification of mental states useful when it had to determine what mental state is required in antitrust prosecutions, see *United States v. United States Gypsum Co.*, 438 U.S. 422, 444–46, 98 S.Ct. 2864, 2878, 57 L.Ed.2d 854 (1978), as did the committee that wrote this circuit's pattern criminal jury instructions, see *Federal Criminal Jury Instructions of the Seventh Circuit* §§ 6.02 to 6.04 (1980), and it is equally helpful in disambiguating § 666. One common starting point for dealing with a wilfulness requirement is the ALI's proposal: "A requirement that an offense be committed wilfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears." *Model Penal Code* § 2.02(8). See also *Federal Criminal Jury Instructions of the Seventh Circuit* § 6.03. A person acts "knowingly" in the ALI's vocabulary when, "if the element [of the offense] involves the nature of [a person's] conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist". *Model Penal Code*

§ 2.02(2)(b)(i). See also *Federal Criminal Jury Instructions of the Seventh Circuit* § 6.04: "[T]he word 'knowingly' ... means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident."

One possible "further requirement" when the statute requires proof of wilfulness is knowledge of the law. *Ratzlaf* held that the wilfulness element in the currency-structuring statutes requires proof that the defendant knew the legal obligation as well as the factual elements of the offense. See also, e.g., *Cheek v. United States*, 498 U.S. 192, 201, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991); *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088–89, 85 L.Ed.2d 434 (1985). The magistrate judge concluded that "willfully" in § 666(e) likewise requires proof that the defendant had basic legal information, as we held in *McLaughlin v. Union Oil Co.*, 869 F.2d 1039, 1047 (7th Cir. 1989) (interpreting the wilfulness element of § 666(a)), although this was watered down by allowing reckless disregard of the regulations to prove knowledge and then by allowing a belief that the firm "reasonably should have known" of the regulations to prove recklessness. This sequence is not terribly important (and we therefore do not decide whether this dilution is proper), because Ladish has never denied having actual knowledge of the legal requirement that fire escapes be strong enough to support a person's weight. Cf. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (discussing wilfulness requirement under Fair Labor Standards Act). What matters, and what Ladish vigorously contests, is the requirement that it act "knowingly" with respect to the facts—that is, that the firm be aware that the fire escape platform had become unstable.

■ The instruction begins by requiring "knowledge of the hazardous condition" but then tells the jury that a corporation has "knowledge" if it "knew or should have known of the hazardous condition." This interprets "knowledge" as a level of understanding below even the weakest formulation

in the ALI's list. The Model Penal Code § 2.02(2)(d) defines "negligently" this way:

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

This is a standard gloss of criminal negligence. The magistrate judge's formulation, by contrast, omitted any requirement that Ladish be aware of "a substantial and unjustifiable risk" or that its conduct involve a "gross deviation from the standard of care that a reasonable person would observe in the actor's situation." An unelaborated "should have known" is the usual formulation in civil cases. See *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir.1990). Thus the jury instruction in this case equated wilfulness with knowledge, watered down knowledge to recklessness, defined recklessness as negligence, and used the civil rather than the criminal approach to negligence.

◼ Transforming wilfulness to civil negligence is inappropriate both in principle and for § 666 in particular. Knowledge in a criminal statute means *actual* knowledge. See *Contract Courier Services, Inc. v. Research and Special Programs Administration*, 924 F.2d 112 (7th Cir.1991). What one ought to have known, but did not know, is not knowledge; it is not even (necessarily) recklessness. Criminal recklessness may be so close to actual knowledge that proof of one suffices for proof of the other, but, as the Court stressed in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), criminal recklessness means awareness of facts from which an inference could be *and is* drawn. 511 U.S. at 836–37, 114 S.Ct. at 1978–79. The jury in this case was not asked to inquire whether Ladish perceived a risk that the fire escape was hazardous *and* concluded that the hazard actually existed. There would be no point to such an

instruction: it comes to the same thing as actual knowledge.

◼ Courts often say that knowledge may be proved by demonstrating that the defendant was conscious of a substantial chance that some fact obtained, but averted his eyes for fear of learning more. See *United States v. Ramsey*, 785 F.2d 184 (7th Cir.1986); *United States v. Giovannetti*, 919 F.2d 1223 (7th Cir.1990), rehearing denied, 928 F.2d 225 (1991). "An ostrich instruction informs the jury that actual knowledge and deliberate avoidance of knowledge are the same thing. When someone knows enough to put him on inquiry, he knows much. If a person with a lurking suspicion goes on as before and avoids further knowledge, this may support an inference that he has deduced the truth and is simply trying to avoid giving the appearance (and incurring the consequences) of knowledge." *Ramsey*, 785 F.2d at 189. Behaving like an ostrich supports an inference of actual knowledge; it is not some kind of substitute for proof of knowledge. At all events, the magistrate judge did not give an ostrich instruction but instead told the jury that *imputed* knowledge was enough, whether or not Ladish had *actual* knowledge. No case of which we are aware treats what a person "should have known" as knowledge or wilfulness. Unless knowledge, recklessness, criminal negligence, and civil negligence are to merge into a single mental state, it is essential to preserve the difference.

◼ *Ratzlaf* remarks that a chameleon word such as "wilful" takes color from the text in which it appears, so let us turn to the rest of § 666 to ascertain whether Congress used the word as equivalent to negligent. Here is the whole statute:

**(a) Willful or repeated violation**

Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $70,000 for each violation, but not less than $5,000 for each willful violation.

**(b) Citation for serious violation**

Any employer who has received a citation for a serious violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, shall be assessed a civil penalty of up to $7,000 for each such violation.

**(c) Citation for violation determined not serious**

Any employer who has received a citation for a violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of regulations prescribed pursuant to this chapter, and such violation is specifically determined not to be of a serious nature, may be assessed a civil penalty of up to $7,000 for each such violation.

**(d) Failure to correct violation**

Any employer who fails to correct a violation for which a citation has been issued under section 658(a) of this title within the period permitted for its correction (which period shall not begin to run until the date of the final order of the [Occupational Safety and Health Review] Commission in the case of any review proceeding under section 659 of this title initiated by the employer in good faith and not solely for delay or avoidance of penalties), may be assessed a civil penalty of not more than $7,000 for each day during which such failure or violation continues.

**(e) Willful violation causing death to employee**

Any employer who willfully violates any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both; except that if the conviction is for a violation committed after a first conviction of such person, punishment shall be by a fine of not more than $20,000 or by imprisonment for not more than one year, or by both.

**(f) Giving advance notice of inspection**

Any person who gives advance notice of any inspection to be conducted under this chapter without authority from the Secretary or his designees, shall, upon conviction, be punished by a fine of not more than $1,000 or by imprisonment for not more than six months, or by both.

**(g) False statements, representations or certification**

Whoever knowingly makes any false statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained pursuant to this chapter shall, upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than six months, or by both.

**(h) Omitted**

**(i) Violation of posting requirements**

Any employer who violates any of the posting requirements, as prescribed under the provisions of this chapter, shall be assessed a civil penalty of up to $7,000 for each violation.

**(j) Authority of Commission to assess civil penalties**

The Commission shall have authority to assess all civil penalties provided in this section, giving due consideration to the appropriateness of the penalty with respect to the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations.

**(k) Determination of serious violation**

For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

**(l) Procedure for payment of civil penalties**

Civil penalties owed under this chapter shall be paid to the Secretary for deposit

into the Treasury of the United States and shall accrue to the United States and may be recovered in a civil action in the name of the United States brought in the United States district court for the district where the violation is alleged to have occurred or where the employer has its principal office. Section 666 identifies four kinds of violations: non-serious; serious; wilful and repeated; wilful and causing death. As severity increases, so does the penalty. Both non-serious and serious violations may be committed without any particular knowledge. Section 666(k) defines a "serious" violation as one that creates a "substantial probability that death or serious physical harm could result" and allows the employer to defend by showing that it "did not, and could not with the exercise of reasonable diligence, know of the presence of the violation"—which is to say, that it was not negligent. A distinction between serious and wilful violations exists only if wilfulness means knowledge that the conditions violate the statute or regulations—actual rather than imputed knowledge, for otherwise we are back to negligence. And so we wrote in *Union Oil*, 869 F.2d at 1047 (citation omitted): "a negligent violation is merely 'serious,' and for a 'willful' violation more is necessary."

■ *Union Oil* said that "more is necessary" but refrained from specifying how much more. Decisions in other circuits have offered many answers, though we're not sure that there is a large substantive difference among them. Compare *United States v. Dye Construction Co.*, 510 F.2d 78, 81–82 (10th Cir.1975), with *St. Joe Minerals Corp. v. OSHRC*, 647 F.2d 840, 847 (8th Cir.1981); compare *Ensign–Bickford Co. v. OSHRC*, 717 F.2d 1419 (D.C.Cir.1983) (majority opinion), with *id.* at 1423–24 (Scalia, J., dissenting). See also "What constitutes 'willful' violation for purposes of §§ 17(a) and (e) of Occupational Safety and Health Act of 1970", 31 A.L.R. Fed. 551 (1977). Section 666 does not imply any special definition, so it is best to treat wilful as a synonym for knowing, and to equate knowledge with awareness of the essential facts and legal requirements. Knowledge may be proved by showing deliberate indifference to the facts or the law, after the fashion of *Farmer*, or by showing awareness of a significant risk coupled with steps to avoid additional information, as with an ostrich instruction, but in either event what must be proved beyond a reasonable doubt is actual rather than constructive knowledge.

■ According to the prosecutor, any error in the jury instruction was harmless, because the evidence permitted the jury to find that Ladish had actual knowledge. Doubtless the record supports such a conclusion, but the nature and extent of the firm's knowledge were contested issues, which the jury instruction all but removed from its purview. The prosecutor must have thought that the instruction mattered; why else so vigorously oppose Ladish's request for an actual-knowledge instruction (or even an ostrich instruction)? Although the record would permit a reasonable jury to find actual knowledge, this jury did not do so. *United States v. Kerley*, 838 F.2d 932 (7th Cir.1988), holds that an error of this kind in a jury instruction is equivalent to no instruction at all on the mental-state element of a crime, and it adds that although such an omission is not invariably plain error (see *Johnson v. United States*, —— U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)), it is not harmless error. The harmless-error rule provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 52(a). Receiving the verdict of the jury on every element of the offense is a "substantial right." To hold otherwise "would be to dispense with trial by jury." *California v. Roy*, 519 U.S. 2, ——, 117 S.Ct. 337, 339, 136 L.Ed.2d 266 (1996) (Scalia, J., concurring). A court may not grant summary judgment for the prosecution on any element of a criminal offense, however clearly the element has been established, *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S.Ct. 2078, 2080, 124 L.Ed.2d 182 (1993), from which it follows that removing a contested element of the offense from the jury's consideration cannot be harmless error even if the evidence strongly favors the prosecution. *United Brotherhood of Carpenters & Joiners v. United States*, 330 U.S. 395, 408–09, 67 S.Ct. 775, 782–83, 91 L.Ed. 973 (1947); *United States v. Pettigrew*, 77 F.3d

1500, 1511 (5th Cir.1996). This is not at all to say that every error in the jury instructions requires reversal. *United States v. Maloney,* 71 F.3d 645, 657–58 (7th Cir.1995), and many other cases say that it does not. But an error that essentially removes an element of the offense from the jury's consideration has to that extent deprived the accused of trial by jury, a "substantial right."

Whether there are exceptions to this proposition is a question that the Supreme Court has twice recently noted but failed to resolve. See *United States v. Rogers,* 94 F.3d 1519 (11th Cir.1996), cert. dismissed as improvidently granted, —— U.S. ——, 118 S.Ct. 673, 139 L.Ed.2d 686 (1998); *Johnson,* —— U.S. at ——, 117 S.Ct. at 1550. The eleventh circuit held in *Rogers* that if the defendant admits an element of the offense, removing the issue from the jury's purview is harmless error. Defending this decision in the Supreme Court, the Solicitor General argued that an error in defining an element of the offense can be harmless when the evidence (from admission or otherwise) is so powerful that only jury nullification could account for an acquittal. Because the defendant is not entitled to a verdict in the teeth of the evidence, "[i]t would be trifling with the administration of the criminal law", *Motes v. United States,* 178 U.S. 458, 476, 20 S.Ct. 993, 1000, 44 L.Ed. 1150 (1900), to remand for a second trial at which the defendant's only hope lies in an appeal to a dispensing power that juries are forbidden to exercise (but cannot be prevented from exercising, given the Double Jeopardy Clause). That proposition, right or wrong, offers no aid to the United States here, for the evidence concerning Ladish's knowledge is subject to enough dispute that a rational jury could find that guilt had not been established beyond a reasonable doubt. This jury had a genuine role to play, but given the erroneous instruction it did not answer the right question. None of the other instructions to the jury presented a functionally equivalent question about Ladish's knowledge; for all we know it accepted Ladish's view of the facts (that the firm neither knew nor suspected that the platform was hazardous) but concluded that it "should have known" (perhaps via more frequent inspections) that the support for the fire escape had rusted through, and returned a guilty verdict on that basis. Much as we prefer to salvage reliable verdicts, we cannot be sure that this *is* a reliable verdict and therefore must remand for a second trial.

Three other issues that arose at the first trial and have been briefed on appeal are likely to recur. We address them now to save time and trouble for everyone.

1. Ladish contends that it was entitled to an instruction under which the jury would acquit if it found that Ladish made good faith efforts to maintain a safe work place. The magistrate judge refused to give such an instruction, and properly so. There is no generic "good faith" defense in federal criminal law in general, *United States v. Talbott,* 78 F.3d 1183, 1187–88 (7th Cir. 1996), or for violations of the Occupational Safety and Health Act in particular, *Valdak Corp. v. OSHRC,* 73 F.3d 1466, 1469 (8th Cir.1996). Efforts to make its workplace safe may show that an offense was not wilful; but if the deed was wilful, then there is no residual room for an appeal to "good faith." Safety programs reduce not only the number of injuries but also the likelihood that the prosecutor will press criminal charges if a death nonetheless occurs. But complying with the law 99.99% of the time is not a defense to disobedience the other 0.01%. Wilfulness is different in this regard from purpose; only when the statute requires the prosecution to show that the defendant acted "purposely"—that is, that the defendant *wanted* to produce the consequences that the statute forbids—would "good faith" be relevant, because it would tend to show that the defendant did not have the forbidden purpose. But § 666(e) calls for proof of knowledge of the safety hazard, not proof that the firm set out to kill an employee or had another evil motive. Because we interpreted § 666(e) in *Union Oil* to require proof that the employer knew of its legal obligation to abate safety hazards, something that a lay person may think of as good faith has some role to play: "[a] violation is not wilful when it is based on a nonfrivolous interpretation of OSHA's regulations." *Union Oil,* 869 F.2d at 1047. But Ladish does not contend that it

interpreted the rules and regulations in a way that permitted it to maintain tumbledown fire escapes. It would divert attention from the big issue—the state of its knowledge of the facts—to give an instruction implying that an employer with a well-organized safety program cannot be convicted under § 666(e) even if it knows about and ignores a life-threatening hazard. The jury should be told to return a guilty verdict if it finds that the elements of the § 666(e) offense have been established.

■ 2. Next Ladish contends that the jury should have been told that corporations, like natural persons, can be forgetful, so that even if Ladish knew at one time that the platform was about to give way, it did not necessarily know this at the time of the violation. Again the magistrate judge made a sound decision not to give such an instruction. Corporate crime and collective knowledge are both problematic constructs, see Daniel R. Fischel & Alan O. Sykes, *Corporate Crime*, 25 J. Legal Studies 319, 341 (1996); Jennifer Arlen & Reinier Kraakman, *Controlling Corporate Misconduct: An Analysis of Corporate Liability Regimes*, 72 N.Y.U. L.Rev. 687 (1997), but Congress has concluded that corporations can "know" and "intend" things, and may be punished as if they were natural persons. Although the rules of law under § 666(e) are the same for corporate and human employers, other vital things differ. Persons forget because the chemical connections in their brains change over time. Corporations do not record knowledge in neural pathways; they record it in file cabinets (and increasingly on computer disks). File cabinets do not "forget." Files may be destroyed, and people may forget *about* data in file cabinets, but a memorandum saying "platform X is unsound and must be repaired" remains in the corporation's knowledge as long as the memo itself continues to exist (and, even after its destruction, as long as a responsible employee remembers it).

There is a second reason, applicable to both persons and corporations, why Ladish is not entitled to a "forgetfulness" instruction. The premise of this instruction is that the employer's knowledge must be contemporaneous with the injury. But this cannot be right. Suppose an employer learns in January 1991 as a result of an inspection that a fire escape is verging on collapse but, wilfully violating its duties under the statute and regulations, decides not to fix the platform (or even to seal the door and direct workers to other escape routes). Six years pass; no one uses the fire escape, so there is no injury. Then in January 1997 a worker ventures onto the platform, which gives way. The death comes as a shock to current employees; the inspection team no longer remembers its recommendations of years before; managers in charge of safety in 1991 have left the firm, and the new managers never discover what their predecessors knew. Still, *the employer* knew of the safety hazard, and delaying repairs so long that the people with knowledge quit or forget does not reduce the employer's culpability. The statute required the employer to act in January 1991, not after the death; the wilful violation for purposes of § 666(e) occurs when the employer knows of the noncompliance but allows the lethal condition to continue. This may long precede the accident. Death is a condition of criminal liability but is distinct from and need not be contemporaneous with the "willfulness" element.

■ 3. Finally, there is a dispute about whose knowledge counts. Ladish contends that corporate knowledge means supervisors' knowledge, and that the jury should have been told that labor strife at the plant may have led rank-and-file workers not to relay their knowledge to supervisors. Of the latter possibility there is no evidence. Not even the most angry of union firebrands withholds news of lifethreatening conditions from an employer, hoping that a fellow worker will die and the firm get its comeuppance from the Department of Labor. Unions do not kill off their members to make rhetorical points. As for the argument that only supervisors' knowledge counts: why? Corporations "know" what their employees who are responsible for an aspect of the business know. Doubtless the knowledge of a worker who trips over a safety hazard but does not understand or report what he has found does not count. Most federal statutes that make

anything of corporate knowledge also require the knowledge to be possessed by persons authorized to do something about what they know. Cf. *Jansen v. Packaging Corp. of America,* 123 F.3d 490 (7th Cir.1997) (en banc). But what's so special, for this purpose, about supervisors? The magistrate judge told the jury to consider the knowledge of Ladish's "officers, directors, and authorized agents" provided "that supervisor or employee has some duty to communicate that knowledge to someone higher up in the corporation." This definition, which asks whether a particular person has been given responsibility over safety (perhaps by being placed on an inspection team), makes more sense than asking whether someone is a supervisor—a status that refers to the power to hire and fire others but that may be unrelated to workplace safety. Following the ordinary law of agency, the instructions told the jury that employers may decide for themselves who is "authorized" to inspect the plant for safety hazards, who is to receive and respond to safety complaints, and who is to report to the persons with authority to make decisions. If "authorized agents" with reporting duties acquire actual knowledge, it is entirely sensible to say that the corporation has acquired knowledge. See *Young v. Bayer Corp.,* 123 F.3d 672, 674–75 (7th Cir. 1997). Ladish could not, by delegating all safety inspection and reporting functions to non-supervisors, shield itself from knowledge of the hazards.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.